# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD GILLION,<br><br>       Petitioner,<br><br>  v.<br><br>DEBBIE ASUNCION, Warden,<br><br>       Respondent. | Case No. LACV 18-3004-SB (LAL)<br><br>**ORDER ACCEPTING REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE** |

Pursuant to 28 U.S.C. § 636, the Court has reviewed the Petition, the Magistrate Judge's Report and Recommendation, Petitioner's Objections and the remaining record, and has made a de novo determination. The Court approves and accepts the Report and Recommendation and finds that Petitioner's Objections generally lack merit. This Order contains additional support for the Court's determination on the issue of ineffective assistance of counsel.

## **DISCUSSION**

Petitioner claims that he was deprived of his Sixth Amendment right to effective assistance of counsel when his lawyer failed to call an eyewitness, Latisha Adkins, at trial. Under *Strickland v. Washington*, 466 U.S. 668, 687 (1984), a petitioner who makes this constitutional claim must show deficient performance resulting in prejudice. In this case, the state trial court assumed deficient performance and summarily denied the habeas petition for lack of prejudice. In light of the deferential standard applied to this determination under the

Antiterrorism and Effective Death Penalty Act ("AEDPA"), federal relief cannot be granted here. *Harrington v. Richter*, 562 U.S. 86, 105 (2011); *see also Shinn v. Kayer*, No. 19-1302, 2020 WL 7327827, at *4 (U.S. Dec. 14, 2020) (reaffirming the deferential standard of review).

But even if the state court erred in finding no prejudice, the petitioner would not be entitled to relief if he failed to show deficient performance. *See Rompilla v. Beard*, 545 U.S. 374, 390 (2005) (finding that the state court erred in failing to find deficient performance but denying relief for lack of prejudice). Because the state court did not reach this issue, this Court considers it de novo. *See id.*; *see also Frantz v. Hazey*, 533 F.3d 724, 735 (9th Cir. 2008) ("[W]e may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised.").

The starting point in evaluating a claim of ineffective assistance of counsel is a "strong presumption" that counsel's performance was within an acceptable range of professional competence. *Strickland*, 466 U.S. at 689; *see also id.* at 690 (emphasizing that "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment"). A petitioner who challenges counsel's performance bears the burden of overcoming the presumption that the challenged action or omission was the product of "sound trial strategy." *Id.* at 689 (internal quotation omitted).

The question here is whether Petitioner satisfied his burden. In analyzing this issue, it is important to properly identify the type of deficiency being claimed. Petitioner attempts to cast his claim primarily as a failure to investigate. (Dkt. No. 2, Fed. Habeas Pet. at 23-25.) But he has presented no evidence that his trial counsel was unaware that Adkins was a potential witness—and on this record he reasonably could not make such a claim. Adkins provided a statement to the police, which was provided to defense counsel (Dkt. No. 11-7, State Habeas Pet., Ex. 3 at 3-4); and the prosecution identified Adkins on its witness list (State Habeas Pet., Ex. 8, Gillion Decl. ¶ 2). Moreover, Jackie Thigpen testified at trial that Adkins was present with her at the scene of the shooting. (Dkt. No. 11-18, Rep. Tr., Vol. 2, at 410:4-412:1.)

To conclude that Petitioner's trial counsel was unaware of Adkins would require a finding that his lawyer abandoned his professional responsibilities by failing to read the police

report, failing to review the prosecution's witness list, failing to listen to Thigpen's trial testimony, and failing to conduct any meaningful investigation. No evidence of such wholesale dereliction is found in Petitioner's declaration. Petitioner does not state that his trial counsel: (i) neglected to investigate the facts when interviewing him; (ii) failed to hire an investigator to interview witnesses, including Adkins; (iii) failed to provide him with police reports (or read them to him); (iv) failed to follow up on any leads Petitioner suggested; or (v) appeared to be unprepared and made serious mistakes at trial.

Instead, Petitioner suggests—without directly stating—that he only learned about Adkins as a potential witness after his conviction was affirmed and after he spent two months studying the record:

> My court of appeal decision was issued on October 23, 2015, and the petition for review was denied on January 13, 2016. About two months later I received my appellate court file from my attorney. I read and studied my appellate court file for about two months. I noticed Latisha Adkins['s] name on the witness list but she was never called as a witness. I also found Adkins['s] police report with her eyewitness testimony about the shooter. Thereafter, I started a phone call and letter writing campaign to seek help with this evidence. . . .

(State Habeas Pet., Gillion Decl. ¶ 2.)

The record contradicts any suggestion that Petitioner only learned about Adkins as a potential witness after his appeal. Like his trial counsel, Petitioner knew that Adkins was at the scene of the shooting, as he too had heard Thigpen testify at length that she was with Adkins at the time; and Petitioner himself appeared to testify that he knew Adkins was there when he arrived at the scene (Dkt. No. 11-19, Rep. Tr., Vol. 3, at 973:23-26).[1] Thus, Petitioner has not shown that his trial counsel *failed to investigate* by not calling Adkins as a witness.

---

[1] The record also suggests that Petitioner knew about the contents of police reports. While Petitioner did not testify that he saw the specific report containing Adkins' statement, it is clear from his testimony that he knew the contents of at least some of the police reports. (*See* Dkt. No. 11-19, Rep. Tr., Vol. 3, at 977:20-27 (correcting the prosecutor about the contents of a report while testifying).) In light of the burden of proof, Petitioner's failure to directly state whether he had known about Adkins's statement to the police does not advance his case.

The real question is whether counsel was deficient in failing to call a *known* witness. The failure to call a witness—even one who purports to provide favorable evidence—is not, by itself, evidence of deficiency. The decision whether to call a witness is a strategic one. *Schroeder v. Premo*, 712 F. App'x 634, 637 (9th Cir. 2017). Any competent trial lawyer knows that calling witnesses may "backfire." *Id.* An evaluation must be made whether the testimony on balance will be beneficial or harmful—which often depends on a lawyer's assessment of witness credibility. This was the decision confronting Petitioner's counsel. Calling Adkins could bolster the defense—or backfire—depending on whether the jury found her credible. The strategic decision was complicated by the fact that Petitioner elected to testify at trial. Counsel had to consider whether his client's testimony would be sufficient to create reasonable doubt and whether Adkins's testimony might bolster or undermine Petitioner's testimony.

Once the issue is properly framed, the *Strickland* analysis is clear. There is a "strong presumption" that Petitioner's counsel made a reasonable strategic decision not to call Adkins. To overcome this presumption, it was incumbent upon Petitioner to demonstrate that his counsel neglected to make an informed decision by failing to interview Adkins to allow him to evaluate her credibility. Petitioner failed to satisfy this burden. Adkins does not state in her declaration that defense counsel neglected to interview her. In fact, she states that she "was interviewed by the police *and someone else who I cannot recall*." (State Habeas Pet., Ex. 1, Adkins Decl. ¶ 6 (emphasis added).[2] This statement is ambiguous: it is not clear if Adkins does not recall the name of the interviewer or if she does not recall on whose behalf the interviewer was acting (or both). Whether accidental or purposeful, this ambiguity does not assist Petitioner because he unambiguously has the burden—and he has not shown that his trial counsel, or a defense investigator, did not interview Adkins.

Petitioner's own declaration fares no better. On the contrary, the declaration raises serious questions that Petitioner reasonably could be expected to have addressed. The most

---

[2] Adkins also stated that she was "subpoenaed to court but never testified." (Adkins Decl. ¶ 6.) But she does not disclose whether the prosecutor or defense subpoenaed her and for what proceeding.

4

glaring omission is his failure to disclose whether he spoke with his trial counsel about Adkins. As discussed, he does not provide any evidence that his lawyer wholly failed to investigate the case or communicate with him about it. It is therefore reasonable to expect that his lawyer would have discussed the potential witnesses with him, including Adkins. And even if his lawyer neglected to do so (which he does not state), Petitioner does not explain why he did not raise this issue with his lawyer—at least by the time he heard Thigpen testify that she and Adkins were at the scene together when the shooting occurred.[3]

Petitioner, therefore, failed to carry his burden. *See Strickland*, 466 U.S. at 691 (noting that "inquiry into counsel's conversations with the defendant may be critical to a proper assessment of counsel's investigation decisions, just as it may be critical to a proper assessment of counsel's other litigation decisions"). This is not a case in which a petitioner would have no way of rebutting the presumption because only his trial counsel knows the relevant information. Petitioner had the ability to rebut the presumption by showing through Adkins's declaration that his trial counsel failed to have her interviewed—if that were the case. Instead, Petitioner offered ambiguity about whether the defense had interviewed her. Petitioner also had the ability to declare that he and his trial counsel never spoke about whether to call Adkins as a witness—if that were the case. Instead, Petitioner submitted a declaration that misleadingly suggests, without directly stating, that he was unaware of Adkins as a potential witness until after his appeal.

More is required to overcome the strong presumption of effective performance than reliance on omission and ambiguity, especially when more is readily available. *Id.*; *see Matylinsky v. Budge*, 577 F.3d 1083, 1092 (9th Cir. 2009) (concluding that petitioner failed to satisfy his "heavy burden" of showing that his trial counsel was "unreasonable or ineffective in selecting his chosen trial strategy"); *Dows v. Wood*, 211 F.3d 480, 486 (9th Cir. 2000)

---

[3] Even if Petitioner did not know if Adkins had seen the shooting, he would have had every incentive to ask whether Adkins could corroborate other key details of his account of the events. For instance, Petitioner testified at trial that he saw Davis lift his hand up with a bottle as if he were about to strike someone, at which time he saw a man pull a gun from his waist or pocket. (Dkt. No. 11-19, Rep. Tr., Vol. 3, at 951:15-21.)

(concluding that petitioner failed to satisfy his burden by not presenting reasonably available evidence); *see also* [Schneider v. MacDonald](), No. C 10-05753 WHA, 2012 WL 104636, at *8 (N.D. Cal. Jan. 12, 2012) (finding that "petitioner who bears the burden of proof on an ineffective assistance of counsel claim could have put forward a declaration to provide additional clarity on these issues").[4]

Accordingly, Petitioner has failed to demonstrate that his trial lawyer rendered ineffective assistance of counsel in violation of Petitioner's constitutional rights.

The Clerk is to serve copies of this Order on the parties.

DATED: December 14, 2020

　　　　　　　　　　　　　　　　　　　　　　　　　
STANLEY BLUMENFELD, JR.
UNITED STATES DISTRICT JUDGE

---

[4] Petitioner suggests that his lawyer should have called Adkins even if she could be expected to recant her statements to the police at trial because that would have made her no different than the prosecution witnesses who testified. ([Fed. Habeas Pet.]() at 28.) But strategic decisions about whether to call a witness are not that simplistic: trial counsel had to consider, among other things, whether he could provide a credible explanation for her recanting and how her testimony might be perceived in the totality of the evidence. Recognizing the ease of hindsight analysis, the Supreme Court has reaffirmed that the *Strickland* standard is not satisfied by second-guessing presumptively sound trial strategy. [*Cullen v. Pinholster*](), 563 U.S. 170, 191 (2011).

6